**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| AMAZON.COM, INC. and AMAZON LOGISTICS, INC., | § § § | |
| Petitioners | § § | |
| v. | § § | NO. |
| JUSTIN BAIK, KATHLEEN FREEMAN, ASHLEY HULL, ZERITA PHILLIPS, BRANDON WEST, and RAFAEL ZAVALA, | § § § § § | |
| Respondents. | § § § | |

**MEMORANDUM OF LAW IN SUPPORT OF PETITION TO COMPEL ARBITRATION**

**TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................ 2

  A.  Amazon Flex and the Terms of Service ................................................... 2

  B.  Respondents' disputes with Amazon ....................................................... 4

III. ARGUMENT ........................................................................................................ 6

  A.  Respondents agreed to arbitrate their disputes with Amazon. ................. 6

  B.  The FAA requires enforcing Respondents' arbitration agreements. ....... 8

    1.  Respondents belong to the class of local delivery drivers. ......... 9

    2.  Respondents' local deliveries do not constitute engagement in foreign or interstate commerce within the meaning of the FAA exemption. ................................................................................... 11

  C.  State law requires enforcing Respondents' agreements ......................... 13

IV. CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bissonnette v. LePage Bakeries Park St., LLC*,
601 U.S. 246 (2024)..................................................................................1, 8, 12, 13

*In re Capco Energy, Inc.*,
669 F.3d 274 (5th Cir. 2012) ......................................................................................7

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) .....................................................................................6

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001).............................................................................................1, 8, 9

*Cole v. Burns Int'l Sec. Servs.*,
105 F.3d 1465 (D.C. Cir. 1997) ................................................................................13

*Davidson v. Hensen*,
954 P.2d 1327 (Wash. 1998).....................................................................................15

*Davis v. EGL Eagle Glob. Logistics L.P.*,
243 F. App'x 39 (5th Cir. 2007) ............................................................................2, 13

*DePhillips v. Zolt Constr. Co.*,
959 P.2d 1104 (Wash. 1998)......................................................................................7

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)...................................................................................................6

*Gotreaux v. Stevens Transp., Inc.*,
No. 23-cv-159, 2024 WL 1164445 (E.D. Tex. Feb. 29, 2024)................................14

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
921 F.3d 522 (5th Cir. 2019) ..................................................................................7, 8

*Hamrick v. Partsfleet, LLC*,
1 F.4th 1337 (11th Cir. 2021) ..................................................................................12

*Harper v. Amazon.com Servs., Inc.*,
12 F.4th 287 (3d Cir. 2021) .............................................................................2, 13, 15

*Harper v. Amazon.com Servs. Inc. (Harper II)*,
No. 19-cv-21735, 2022 WL 17751465 (D.N.J. Dec. 19, 2022)......................2, 14, 15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) ...........................................................................................7, 8

*Long v. BDP Int'l, Inc.*,
    919 F. Supp. 2d 832 (S.D. Tex. 2013) ...................................................................14

*Lopez v. Cintas Corp.*,
    47 F.4th 428 (5th Cir. 2022) ..................................................................... *passim*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ................................................................................................6

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022) ................................................................................. *passim*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ....................................................................................................6

*Nichols v. Austin Bridge & Rd. LP*,
    No. 23-cv-1318, 2024 WL 1054629 (N.D. Tex. Mar. 11, 2024)..........................1, 12

*Nunes v. LaserShip, Inc.*,
    No. 22-cv-2953, 2023 WL 6326615 (N.D. Ga. Sept. 28, 2023)..........................1, 12

*O'Bryant v. Flowers Foods, Inc.*,
    629 F. Supp. 3d 377 (D.S.C. 2022)........................................................................12

*Parr v. Stevens Transp., Inc.*,
    No. 19-cv-2378, 2020 WL 2200858 (N.D. Tex. May 5, 2020) ..........................2, 14

*Pettie v. Amazon.com, Inc.*,
    No. CIVDS1908923, 2023 WL 4035015 (Cal. Super. Ct. May 25, 2023).......................10, 12

*Rittmann et al. v. Amazon.com Inc. et al.*,
    No. 2:16-cv-1554 (W.D. Wash. Feb. 1, 2023)..............................................4, 5, 15

*Rittmann v. Amazon.com, Inc.*,
    971 F.3d 904 (9th Cir. 2020) .......................................................................4, 9, 15

*Textile Unlimited, Inc. v. A..BMH & Co.*,
    240 F.3d 781 (9th Cir. 2001) ..................................................................................6

*Torrey v. Infectious Diseases Soc'y of Am.*,
    86 F.4th 701 (5th Cir. 2023) ..................................................................................14

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009)..................................................................................................5

*Waithaka v. Amazon.com, Inc.*,
  966 F.3d 10 (1st Cir. 2020)......................................................................9, 15

*Wallace v. Grubhub Holdings, Inc.*,
  970 F.3d 798 (7th Cir. 2020) ...........................................................................12

*Washington v. Sears Logistics Servs., Inc.*,
  No. 13-cv-3060, 2014 WL 2159253 (N.D. Tex. May 23, 2014)........................2, 14

*In re Whataburger Rests. LLC*,
  645 S.W.3d 188 (Tex. 2022).............................................................................14

**Statutes**

9 U.S.C. § 1...........................................................................................1, 2, 8

9 U.S.C. § 2...........................................................................................8, 9

9 U.S.C. § 3...........................................................................................6

9 U.S.C. § 4...........................................................................................1, 5, 6, 13

28 U.S.C. § 1331.....................................................................................5

28 U.S.C. § 1367.....................................................................................5

28 U.S.C. § 1391.....................................................................................5

29 U.S.C. § 216(b)...................................................................................4

Tex. Civ. Prac. & Rem. Code § 171.001 ........................................................14

Wash. Rev. Code § 7.04A.070...................................................................15

**Other Authorities**

Am. Arb. Ass'n, Commercial Arbitration Rules and Mediation Procedures R-7(a)
  (Sept. 1, 2022)........................................................................................7

## I.    INTRODUCTION

When Respondents signed up to perform local deliveries through the Amazon Flex program in the Dallas/Ft. Worth area, they agreed to arbitrate on an individual basis in Texas. Yet now they seek to litigate claims against Amazon in a collective action in Washington. The Court should compel Respondents to pursue individual arbitration under 9 U.S.C. § 4, in accordance with the terms of their agreements.

Amazon anticipates Respondents will try to escape their agreements by invoking Section 1 of the Federal Arbitration Act ("FAA"). That provision exempts from the FAA's usual coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Any attempt to invoke this exemption would fail. The Supreme Court has repeatedly recognized this exemption's "narrow" scope. *See Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024) (citation omitted); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118 (2001). And under controlling Fifth Circuit precedent, local delivery drivers like Respondents—who picked up goods within Texas and deliver them to customers in Texas—do not come within the exemption merely because *other classes of workers* may have previously transported those goods across state lines. *See Lopez v. Cintas Corp.*, 47 F.4th 428, 432 (5th Cir. 2022) ("We conclude that local delivery drivers are not so 'engaged' in 'interstate commerce' as § 1 contemplates."); *see also Nichols v. Austin Bridge & Rd. LP*, No. 23-cv-1318, 2024 WL 1054629, at *3 (N.D. Tex. Mar. 11, 2024) ("In *Lopez*, the Fifth Circuit concluded a class of delivery drivers was not engaged in interstate commerce when delivering items from a local warehouse to local customers."); *Nunes v. LaserShip, Inc.*, No. 22-cv-2953, 2023 WL 6326615, at *3 (N.D. Ga. Sept. 28, 2023) (following *Lopez* in rejecting argument "that last-mile delivery drivers are engaged in interstate commerce because the goods they transport have traveled interstate and remain in the stream of commerce until delivered").

And even if Respondents' agreements were exempt from the FAA, they would still be binding, valid, and enforceable under state law. *See, e.g.*, *Davis v. EGL Eagle Glob. Logistics L.P.*, 243 F. App'x 39, 44 (5th Cir. 2007) ("We … hold that the Agreement's arbitration provision is valid and enforceable under the [Texas General Arbitration Act], even if the Agreement is excepted from application of the FAA."); *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 294 (3d Cir. 2021) (explaining that even when the FAA Section 1 exemption applies, "the parties still have an agreement to arbitrate, and if federal law does not govern the arbitrability of their contract, *some* law must."); *Parr v. Stevens Transp., Inc.*, No. 19-cv-2378, 2020 WL 2200858, at *6 (N.D. Tex. May 5, 2020) (compelling arbitration under Texas law because FAA exemption applied); *Washington v. Sears Logistics Servs., Inc.*, No. 13-cv-3060, 2014 WL 2159253, at *1, 4 (N.D. Tex. May 23, 2014) (compelling arbitration under Texas law without deciding whether FAA exemption applied). Indeed, another federal court recently held that an Amazon Flex agreement is enforceable under state law, regardless of whether the FAA exemption applies. *Harper v. Amazon.com Servs. Inc.* (*Harper II*), No. 19-cv-21735, 2022 WL 17751465, at *7 (D.N.J. Dec. 19, 2022) (compelling arbitration under Washington and/or New Jersey law). Whether under federal or state law, the Court should compel Respondents to arbitrate as their agreements require.

## II.    FACTUAL BACKGROUND

### A.    Amazon Flex and the Terms of Service

Affiliates of Amazon.com, Inc. sell products through a variety of channels, including the Amazon.com website, mobile applications, and retail locations like Whole Foods Market. *See* Declaration of John Rodgers ("Rodgers Decl."), ¶¶ 4-5. Amazon Logistics, Inc. contracts with third-party contractors—including individual independent contractor "Delivery Partners" who, like Respondents, sign up to become eligible to perform delivery blocks through a smartphone application-based program called Amazon Flex. *Id.* ¶¶ 3, 6. Amazon Flex Delivery Partners use

personal vehicles to make local deliveries of groceries, food, and other goods to customers. *Id.* ¶¶ 6, 11-21. For example, during their time as Delivery Partners, Respondents performed deliveries in the Dallas and Ft. Worth areas. *Id.* ¶ 39. To sign up with Amazon Flex, a prospective Delivery Partner must download the Amazon Flex app, create an account, select a local area in which they wish to make deliveries, and accept the Amazon Flex Independent Contractor Terms of Service ("TOS"). *Id.* ¶ 22. Numerous versions of the TOS have governed at various times since the Amazon Flex program began. *Id.*

In signing up to become eligible to make Amazon Flex deliveries, Respondents clicked a button signifying that they accepted the then-applicable version of the TOS. *Id.* ¶¶ 28, 36. Respondent Baik accepted the then-applicable version of the TOS (version 7) on May 10, 2016. *Id.* ¶ 23. Respondent Freeman accepted the then-applicable version of the TOS (version 10) on October 31, 2017. *Id.* ¶ 31. Respondent Hull accepted the then-applicable version of the TOS (version 10) on March 4, 2017. *Id.* ¶ 32. Respondent Phillips accepted the then-applicable version of the TOS (version 6) on April 22, 2016. *Id.* ¶ 24. Respondent West accepted the then-applicable version of the TOS (version 9) on November 26, 2016. *Id.* ¶ 33. Respondent Zavala accepted the then-applicable version of the TOS (version 6) on November 30, 2015. *Id.* ¶ 25.

Each of these TOS versions contain a mutual agreement to arbitrate covered disputes and claims on an individual basis. The covered disputes and claims include any dispute or claim in any way related to the TOS, the Delivery Partner's participation in the Amazon Flex program, or the Delivery Partner's performance of services through the program. TOS v.6-v.7 § 12; TOS v.9-v.10. Each version also ties the location of the arbitration to the area where the Delivery Partner provided services. Under Versions 6 and 7, "[t]he arbitration will take place at a mutually-convenient location in the state where you provide or have provided Services." TOS v.6-v.7 § 12. Under

Versions 9 and 10, "[t]he arbitration will take place at a mutually-convenient location within 45 miles from the last location in which you provided Services." TOS § 11(i).

Each TOS version also has a choice-of-law provision. As relevant here, the choice-of-law provisions generally selected Washington state law but specified that the arbitration provisions were governed by the FAA and applicable federal law. TOS v.6-v.7 § 13; TOS v.9-v.10 § 12. The contract's severability provision states, "If any provision of [the agreement] is determined to be unenforceable, the parties intend that [the agreement] be enforced as if the unenforceable provisions were not present and that any partially valid and enforceable provisions be enforced to the fullest extent permissible under applicable law." TOS v.6-v.7, v.9-v.10 § 16.

### B.    Respondents' disputes with Amazon

The dispute underlying this proceeding arises from a putative collective action against Amazon under the federal Fair Labor Standards Act ("FLSA") and putative class claims under related state-law theories. *See Rittmann et al. v. Amazon.com Inc. et al.*, No. 2:16-cv-1554 (W.D. Wash. Feb. 1, 2023) ("*Rittmann* Dkt."), ECF No. 262, ¶¶ 40-41. Rather than comply with their agreements to arbitrate and pursue their allegations in arbitration, Respondents joined the *Rittmann* action as opt-in plaintiffs using the FLSA's mechanism for a collective action. *See* 29 U.S.C. § 216(b) (under the FLSA, an opt-in plaintiff becomes "a party plaintiff to any such action [when] he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought").

Amazon previously moved to compel a named plaintiff in *Rittmann* (Raef Lawson) to arbitrate his claims. *See Rittmann* Dkt., ECF No. 36. In 2019, the district court in *Rittmann* declined to compel arbitration under the FAA and Washington state law, and the Ninth Circuit affirmed. *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021). Through successive amended complaints, consolidations, and opt-in notices, the number of

plaintiffs in the case has swelled to more than 100, including plaintiffs with different arbitration agreements than the agreement considered in 2019. The *Rittmann* district court litigation has been stayed a total of 2,343 days (more than 6.4 years)—and therefore, despite its age, it is at an early stage of the proceedings. Recently, on May 14, 2024, the district court entered a scheduling order allowing Amazon to renew its motion to compel arbitration at an undetermined future date. *Rittmann* Dkt., ECF no. 298. As this history shows, the question of whether plaintiffs in *Rittmann* must arbitrate their claims remains unresolved for many plaintiffs in the case, including Respondents here.

Amazon now respectfully petitions to compel arbitration of Respondents' claims against Amazon. This Court has federal question jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. *See Vaden v. Discover Bank*, 556 U.S. 49, 62, 69 n.18 (2009). Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 9 U.S.C. § 4. The FAA permits any party "aggrieved by the failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition "any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement" and requires that the arbitration "be within the district in which the [Section 4] petition … is filed." 9 U.S.C. § 4. As noted, the arbitration provisions here authorize arbitration "at a mutually-convenient location in the state where you provide or have provided Services," TOS v.6-v.7 § 12, or "within 45 miles from the last location in which [the Respondent] provided Services." TOS v.9-v.10 § 11(i). Because Respondents provided services within this District, that arbitration location is within this Court's jurisdiction, and an order compelling arbitration by this Court would enforce terms of the arbitration agreement. In contrast, the district court in *Rittmann* lacks the authority to compel arbitration in this state where Respondents are contractually required to arbitrate; its authority

under Ninth Circuit precedent is limited to staying litigation of Respondents' arbitrable claims under 9 U.S.C. § 3 or compelling arbitration within the Western District of Washington. *See, e.g.*, *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 785 (9th Cir. 2001) (stating that Section 4 "confines the *arbitration* to the district in which the petition to compel is filed").

## III.    ARGUMENT

The FAA adopts a "policy favoring arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). To further that policy, the FAA provides "two parallel devices for enforcing an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). The first device is a motion under Section 3 of the FAA, which allows a party to seek "a stay of litigation in any case raising a dispute referable to arbitration." *Id.*; *see* 9 U.S.C. § 3. The second device is a petition under Section 4 of the FAA, which allows the party to affirmatively seek "an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. A court may grant a Section 4 petition and compel the respondent to arbitrate when, as here, the respondent has sued the petitioner in another forum. *See, e.g.*, *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1027-28, 1034 (9th Cir. 2022) (affirming final order granting Section 4 petition filed in Arizona by defendant in litigation in Oklahoma).

### A.    Respondents agreed to arbitrate their disputes with Amazon.

The first task of a court asked to compel arbitration is to determine whether the parties have a valid arbitration agreement. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). To do so, the Court should "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under any potentially applicable body of state law, Respondents formed a binding contract by accepting the version of the TOS that governed when they signed up with the program. The TOS provides that it is generally governed by Washington law and Respondents signed up and

performed services in Texas. The requirements for contract formation under Washington law do not differ in any material way from the requirements under Texas law: both states require offer and acceptance (*i.e.*, assent), plus consideration. *See, e.g.*, *In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012) (identifying the basic requirements for contract formation under Texas law); *DePhillips v. Zolt Constr. Co.*, 959 P.2d 1104, 1107 (Wash. 1998) (same under Washington law). Respondents manifested assent to the TOS by clicking buttons signifying acceptance of the agreement. *See supra* p. 3; Rodgers Decl. ¶¶ 28, 36.

When the parties have agreed to arbitrate, courts often ask next whether the agreement encompasses the present dispute. But when the parties' agreement delegates arbitrability disputes to the arbitrator, courts leave delegated arbitrability questions for the arbitrator to decide in the first instance. *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). Here, Versions 6 and 7 of the TOS delegate threshold disputes over arbitrability, including any dispute over the scope of the arbitration provision, to the arbitrator. It does so by adopting the AAA Commercial Arbitration Rules. TOS v.6-v.7 § 12.[1] Those rules give the arbitrator "power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim." Am. Arb. Ass'n, Commercial Arbitration Rules and Mediation Procedures R-7(a), at 14 (Sept. 1, 2022), https://www.adr.org/sites/default/files/Commercial-Rules_Web.pdf. Courts widely hold that incorporating this AAA rule constitutes a "clear and unmistakable agreement that the arbitrator would decide its jurisdiction and the arbitrability of any claim." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 537 (5th Cir. 2019) (citation omitted). Moreover, the

---

[1] Versions 9 and 10, in contrast, provide that "notwithstanding any provision in the AAA rules, any disputes regarding the arbitrability of a claim … shall be decided by a court of competent jurisdiction, and not by an arbitrator." TOS v.9-v.10 § 11(j).

parties assented to "a broad arbitration clause," *id.*, which covers "any dispute or claim relating in any way to [their contract]," TOS v.6-v.7 § 12, and thus encompasses arbitrability disputes.

Under Versions 6 and 7, because the scope of the arbitration provision is for the arbitrator to decide, the Court should compel arbitration without resolving whether the arbitration provision extends to Respondent's underlying claim. *See, e.g.*, *Henry Schein*, 586 U.S. at 68. But even for versions of the TOS that lack a delegation provision, there is no genuine doubt about whether the TOS arbitration provision extends to Respondents' wage-and-hour claims. Respondents seek to contest their classification as independent contractors in the Amazon Flex program, on the premise that they should be classified as employees instead. These claims and disputes readily qualify as claims or disputes arising out of or relating in any way to the TOS, to Respondents' participation in the Amazon Flex program, or to their performance of Amazon Flex services and thus fall within the scope of the arbitration provisions. TOS v.6-v.7 § 12; TOS v.9-v.10 § 11(a).

**B.    The FAA requires enforcing Respondents' arbitration agreements.**

The FAA governs Respondents' obligation to arbitrate pursuant to the TOS choice-of-law provision. TOS v.6-v.7, v.9-v.10 § 12. And even apart from their contracts' choice-of-law provision, the FAA's basic coverage generally extends to arbitration agreements in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Amazon Flex transactions involve interstate commerce within the meaning of Section 2 because Section 2's use of the phrase "involving commerce" expresses Congress's "intent to regulate to the full extent of its commerce power." *Cir. City*, 532 U.S. at 114.

Respondents' only potential argument against applying the FAA relies on the statute's carveout for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has repeatedly instructed that the Section 1 exemption has a "'narrow' scope," *Bissonnette*, 601 U.S.

at 256 (citation omitted), because it is written using more restrictive phrasing ("engaged in foreign or interstate commerce") than the expansive language of Section 2 ("involving commerce"), *see Cir. City*, 532 U.S. at 115-16. Although some courts have erroneously determined that the Amazon Flex TOS falls within the exemption, *see Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 916 (9th Cir. 2020); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 26 (1st Cir. 2020), those cases conflict with controlling Fifth Circuit precedent.

In *Lopez*, the Fifth Circuit observed that the Supreme Court's 2022 decision in *Saxon* "laid out the proper framework for determining whether a person falls within the transportation-worker exemption." 47 F.4th at 431. First, the Court "must define the relevant 'class of workers' that [the individual] belongs to." *Id.* Second, the Court "must determine whether that class of workers is 'engaged in foreign or interstate commerce.'" *Id.* The Fifth Circuit ruled that a driver who made within-Texas deliveries of items shipped from out of state belonged to a class of local delivery drivers and further ruled that this class of workers was not engaged in foreign or interstate commerce for purposes of the FAA exemption. *Id.* at 431-33. The same conclusions apply here.

### 1.    Respondents belong to the class of local delivery drivers.

*Saxon* explained that when defining the relevant 'class of workers' to which [the individual worker] belongs," courts should focus on *the workers' own activities*. *Saxon*, 596 U.S. at 455. The worker in *Saxon* was a Southwest Airlines "ramp supervisor" who frequently loaded cargo onto outbound aircraft and unloaded cargo from inbound aircraft. *Id.* at 456. Although she asked the Supreme Court to define the relevant class of workers based on the business of her employer, Southwest argued that the class of workers should be defined "based on *their* conduct, not their *employer's*." *Id.* at 455-56 (citation omitted). *Saxon* adopted Southwest's worker-centered approach, explaining that the plaintiff was "a member of a 'class of workers' based on what she does at Southwest, not what Southwest does generally." *Id.* at 456. It defined the class there as

"workers who physically load and unload cargo on and off airplanes on a frequent basis." *Id.*; *see also Lopez*, 47 F.4th at 431 (defining "the relevant 'class of workers' by the work that Lopez actually did at Cintas").

Respondents belong to a class of local delivery drivers. *See, e.g.*, *Lopez*, 47 F.4th at 430-32 (concluding that under *Saxon*'s framework, a self-described "last-mile driver" belonged to a class of "local delivery drivers"); *Pettie v. Amazon.com, Inc.*, No. CIVDS1908923, 2023 WL 4035015, at *1 (Cal. Super. Ct. May 25, 2023) ("Unlike the workers at issue in *Saxon*, who had a direct role in interstate commerce, Amazon Flex delivery drivers more perform the role of local delivery drivers, similar to those at issue in *Lopez*[.]"). Respondents and other Amazon Flex Delivery Partners used ordinary vehicles, like their own cars, to deliver customer orders within a local area during "delivery blocks" that typically last between two to six hours. Rodgers Decl. ¶¶ 11, 21. Amazon Flex deliveries have often included goods that are already in the same state as the customer at the time they are ordered—including grocery and food orders from Whole Foods Market stores and restaurants, goods picked up from other retail stores, and items available for fast, same-day delivery. *Id.* ¶¶ 12-14. Some Amazon Flex Delivery Partners have also picked up "brown box" packages of items warehoused in Amazon fulfillment centers. *Id.* ¶ 15. Even in this last category, the goods were often in the same state as the customer at the time of the order. *Id.* ¶ 16. And when they were not, the Amazon Flex Delivery Partners played no role in the long-haul transportation of those goods across state lines. Several distinct classes of workers engaged in that long-haul interstate transportation by loading the airplanes and/or tractor-trailers, piloting or driving them, and unloading them. *Id.* ¶¶ 10, 16. Another class of workers sorted and batched the goods after the long-haul transportation concluded. *Id.* ¶ 16. And even when the goods had to cross state lines to get from an out-of-state fulfillment center to an in-state location, there was still

generally at least one, and often more than one, wholly intrastate journey between the in-state sort center and the in-state delivery station, with more loading and unloading, batching and rebatching along the way by yet other distinct classes of workers. *Id.* ¶¶ 16-17. The activities of these multiple other classes of workers occurred *before* Delivery Partners like Respondents picked up the batch of items for their delivery block, loaded those items into their cars, and took them short distances to local customers. *Id.* ¶¶ 18-19. The Delivery Partners did not interact with the workers or vehicles that transport the goods across state lines. *See id.* ¶¶ 19-20. Amazon Flex Delivery Partners are thus local delivery drivers for FAA purposes who are many steps removed from any long-distance transportation across borders.

Respondents may argue that they belong to a class of "last-mile drivers" rather than a class of local delivery drivers. It would be error, however, to define the FAA class of workers that way. *See, e.g.*, *Lopez*, 47 F.4th at 431-32 (declining to define the class of workers using the plaintiff's self-description as a "last-mile driver"). The concept of last-mile drivers presupposes that the drivers perform the last leg of a broader journey also involving other classes of workers and thus would incorporate, in the class-of-workers definition, the activities of distinct workers merely because they perform transportation-related tasks for the same overarching business. In this way, the "last-mile" label relies on the broader activities of the company for which the workers perform their activities, contrary to *Saxon*'s instruction to focus on the actual work of the class of workers themselves. *See Saxon*, 596 U.S. at 456. The appropriate class definition here is local delivery drivers.

### 2. Respondents' local deliveries do not constitute engagement in foreign or interstate commerce within the meaning of the FAA exemption.

The next question is "whether that class of workers is 'engaged in foreign or interstate commerce'" within the meaning of the FAA exemption. *Saxon*, 596 U.S. at 455. To meet that

description, the class of workers must "play a *direct and necessary role* in the free flow of goods *across borders*" and "be *actively engaged* in transportation of those goods *across borders* via the channels of foreign or interstate commerce." *Id.* at 458 (citations and quotation marks omitted); *see also Bissonnette*, 601 U.S. at 256; *Lopez*, 47 F.4th at 432-33.

Once again, *Lopez* is controlling. The Fifth Circuit recognized that local delivery drivers lack "a 'direct and necessary role' in the transportation of goods across borders" and are not "actively engaged in transportation of those goods across borders." *Lopez*, 47 F.4th at 433. Under *Saxon*'s test, it makes no difference whether the goods have "arrived at the warehouse from out of state." *Id.* at 430. That is because "once the goods arrived at the [in-state] warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce." *Id.*; *see also Pettie*, 2023 WL 4035015, at *1 (holding that Amazon Flex Delivery Partners are not exempt from the FAA under *Saxon* and *Lopez*); *Nichols*, 2024 WL 1054629, at *3 (observing that *Lopez*'s class of local delivery drivers "never left the state when delivering their respective goods" and were held not to be exempt from the FAA even though they "delivered goods that had previously passed in interstate commerce"); *Nunes*, 2023 WL 6326615, at *3 (observing that *Lopez* rejected the argument "that last-mile delivery drivers are engaged in interstate commerce because the goods they transport have traveled interstate and remain in the stream of commerce until delivered").[2]

---

[2] *See also, e.g.*, *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1351 (11th Cir. 2021) (holding that it was "error" for the district court to "conclude[] that the drivers fell within the transportation worker exemption because 'the goods at issue in this case originated in interstate commerce and were delivered, untransformed, to their destination'"); *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th Cir. 2020) (holding that delivering orders from local restaurants does not trigger the exemption); *O'Bryant v. Flowers Foods, Inc.*, 629 F. Supp. 3d 377, 388 (D.S.C. 2022) (following *Hamrick* to conclude that "Plaintiff was not actually 'engaged in foreign or interstate commerce' in the sense relevant to § 1's residual clause because his deliveries were purely intrastate").

The Supreme Court's recent decisions on the FAA exemption—while not explicitly resolving the status of local delivery drivers under the FAA—further support these cases' focus on the local nature of the work the delivery drivers perform, rather than the location history of the delivered goods. In *Saxon*, the Court rejected the plaintiff's preferred industrywide approach that would apply the exemption based on the broader activities of the company for which the workers perform their activities, rather than the activities of the workers themselves. 596 U.S. at 455-56. And the Supreme Court reinforced this workers-centered approach in *Bissonnette*, 601 U.S. at 253-54, 256. In doing so, the Court easily rejected the suggestion that the exemption could extend to all workers who handle goods that "move in interstate commerce." *Id.* at 256.

Respondents do not belong to a class of workers that "directly," *Saxon*, 596 U.S. at 457, or "actively" engages in the transportation of goods across state borders within the meaning of 9 U.S.C. § 1, *Bissonnette*, 601 U.S. at 256 (citation omitted). So their arbitration agreements are not exempt from the FAA, and Section 4 of the FAA requires that those agreements be enforced.

### C.    State law requires enforcing Respondents' agreements.

Even when an arbitration agreement falls outside the scope of the FAA, it may still be enforceable under state law. *See, e.g.*, *Davis*, 243 F. App'x at 43 ("[E]ven assuming the Agreement fell under the FAA's exception for transportation workers, the arbitration provision [is] nonetheless valid and enforceable under the Texas General Arbitration Act[.]"); *Harper I*, 12 F.4th at 295 (even if the FAA is inapplicable, that "does not mean all state law about arbitration vanishes"); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1472 (D.C. Cir. 1997) ("[E]ven if an arbitration agreement is outside the FAA, the agreement still may be enforced."); *Shanks*, 2008 WL 2513056, at *4 ("The weight of authority shows that even if the FAA is inapplicable, state arbitration law governs.").

Although choice of law ordinarily is a threshold issue before a substantive analysis, the choice between the potentially applicable state laws here—Texas and Washington—is immaterial. Arbitration would be compelled under either state's laws. *See, e.g.*, *Torrey v. Infectious Diseases Soc'y of Am.*, 86 F.4th 701, 704 (5th Cir. 2023) (recognizing that courts "need not resolve the choice-of-law question" when the potentially applicable "States' laws do not meaningfully differ").

First, the TOS is enforceable here under the law of Texas, the forum state and the state in which Respondents entered their agreements and provided Amazon Flex local delivery services. *See Shanks*, 2008 WL 2513056, at *4 n.3 (noting that Texas had the most significant relationship to dispute arising out of Texas worker's performance of job duties); *Harper II*, 2022 WL 17751465, at *9 (compelling New Jersey Amazon Flex Delivery Partner to arbitrate under New Jersey law as an alternative holding); *see* Rodgers Decl. ¶ 39. Courts have consistently compelled FAA-exempt and potentially FAA-exempt Texas workers to arbitrate under Texas law. *Parr*, 2020 WL 2200858, at *6 (compelling arbitration under Texas law because FAA exemption applied); *Washington*, 2014 WL 2159253, at *1, 4; *Gotreaux v. Stevens Transp., Inc.*, No. 23-cv-159, 2024 WL 1164445, at *7 (E.D. Tex. Feb. 29, 2024), *R&R adopted*, 2024 WL 1161318 (E.D. Tex. Mar. 18, 2024); *Long v. BDP Int'l, Inc.*, 919 F. Supp. 2d 832, 851 (S.D. Tex. 2013); *Shanks*, 2008 WL 2513056, at *4. Texas has a statute that broadly requires enforcing arbitration agreements, much like the FAA's. Tex. Civ. Prac. & Rem. Code § 171.001; *cf. In re Whataburger Rests. LLC*, 645 S.W.3d 188, 198 (Tex. 2022) ("Federal and state policies favor arbitration for its efficient method of resolving disputes[.]" (citation omitted)). Thus, even if the FAA exemption applies to the TOS, the Court can and should compel arbitration under Texas law.

Second, the TOS is also enforceable under the law of Washington. In the *Harper* litigation, the Third Circuit remanded the case to the district court so it could determine whether a similarly worded version of the Amazon Flex TOS was enforceable under state law. The district court determined that the answer was yes and held that the TOS's "arbitration agreement is valid and enforceable under Washington law." *Harper II*, 2022 WL 17751465, at *7, *9. It was appropriate to apply Washington law to compel arbitration because of the agreement's severability provision in Section 16: were the contract truly unenforceable under the FAA, "the portion of the governing law section which states that the 'FAA and applicable federal law' govern the dispute resolution section of the Agreement is severed." *Id.* at *8. "What remains is an express choice of Washington law to govern the 'interpretation of the Agreement.'" *Id.* Much like federal law with the FAA, Washington has a statute and public policy requiring enforcement of arbitration agreements and no transportation-worker carveout. Wash. Rev. Code § 7.04A.070; *e.g.*, *Davidson v. Hensen*, 954 P.2d 1327, 1330 (Wash. 1998) ("Washington law generally favors the use of alternative dispute resolution such as arbitration where the parties agree by contract to submit their disputes to an arbitrator."). Washington law thus provides an independent ground to compel arbitration.[3]

## IV.   CONCLUSION

For all these reasons, this Court should compel Respondents to arbitrate their disputes within this District on an individual basis in accordance with the terms of their agreements.

---

[3] In *Rittmann*, the Ninth Circuit construed the choice-of-law provision in one version of the TOS as foreclosing application of Washington law and further held that "there is no law that governs the arbitration provision." *See* 971 F.3d at 920-21. Other courts have correctly rejected those views. *See Waithaka*, 966 F.3d at 27 (holding that Washington law governs an Amazon Flex TOS arbitration provision if FAA is inapplicable); *Harper II*, 2022 WL 17751465, at *8 (agreeing with *Waithaka* on this issue); *Harper I*, 12 F.4th at 294 ("[I]f federal law does not govern the arbitrability of [this] contract, *some* law must.").

Dated: June 14, 2024

Respectfully submitted,

*s/ Clayton M. Davis*

**MORGAN LEWIS & BOCKIUS LLP**
Clayton M. Davis
Texas Bar No. 24092323
1717 Main Street, Suite 3200
Dallas, TX  75201
clayton.davis@morganlewis.com
T. (214) 466-4000
F. (214) 466-4001

Catherine L. Eschbach
Texas Bar No. 24097665
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
catherine.eschbach@morganlewis.com
T. (713) 890-5000
F. (713) 890-5001

Michael E. Kenneally (*pro hac vice* forthcoming)
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
michael.kenneally@morganlewis.com
T. (202) 739-3000
F. (202) 739-3001

*Counsel for Petitioners*